Dean T. Kirby, Jr.   090114
Roberta S. Robinson 099035
KIRBY & McGUINN, A P.C.
707 Broadway, Suite 1750
San Diego, California 92101
Telephone: (619) 685-4000
Facsimile:  (619) 685-4004

Attorneys for Creditors
Debt Acquisition Company of America V, LLC and
DACA 2010L, LP

# UNITED STATES BANKRUPTCY COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re<br><br>TRANSDEL PHARMACEUTICALS, INC.<br><br>Debtor. | CASE NO. 11-10497-PB11<br><br>OPPOSITION OF CREDITORS DEBT ACQUISITION COMPANY OF AMERICA V, LLC AND DACA 2010L, LP TO DEBTOR'S MOTION FOR AN ORDER DISMISSING ITS CHAPTER 11 CASE AND RETAINING JURISDICTION OVER CLAIMS OBJECTION PROCEEDING<br><br>DATE:     November 21, 2011<br>TIME:     3:00 p.m.<br>DEPT.     4<br>HON.  Peter  W. Bowie |

Creditors Debt Acquisition Company of America V, LLC and DACA 2010L, LP (collectively "DACA") oppose the Debtor's Motion for an Order Dismissing Its Chapter 11 Case and Retaining Jurisdiction Over Claims Objection Proceeding as follows:

## I.    INTRODUCTION

DACA holds several unsecured claims in this matter. Despite the best efforts of the United States Trustee, an unsecured creditors committee has not been formed. In this vacuum, in what appears to be a calculated end run around the bankruptcy process, the Debtor has moved to dismiss this case, characterizing the relief sought as "structured dismissal." As discussed more fully below,

DACA'S OPPOSITION TO DEBTOR'S MOTION TO DISMISS CASE                                                      CASE NO. 11-10497-PB11
1

however, the relief sought is not a true "structured dismissal," as that term is currently understood.

Moreover, less than full and, indeed, to a large measure, conflicting and seemingly misleading information about Dermastar and its proposal have been provided to the Court and creditors. At this point in time, based on the information provided, it is impossible to determine whether the interests of unsecured creditors would be served by a dismissal or that cause exists for the dismissal of the case. Accordingly, the Debtor has wholly and completely failed to show that dismissal is appropriate under either Section 305(a) or Section 1112(b) and, as such, has failed to carry its burden of proof on the motion. To protect the interests of the unsecured creditors, the motion must be denied at this time.

II. **THE MOTION CONTAINS INSUFFICIENT AND CONFLICTING INFORMATION**

By this motion, the Debtor seeks to dismiss the bankruptcy proceeding, and asks the unsecured creditors to forego the protections afforded them by the Bankruptcy Code. Having voluntarily sought the protection of the Bankruptcy Court, the Debtor now wishes to divest itself of Court oversight, through what it calls a "structured dismissal." Despite the Debtor's characterization, the motion does not have any of the earmarks of the typical "structured dismissal." In common parlance, a "structured dismissal," (which is sometimes sought after a debtor, having sold all of its assets pre-confirmation, is left with few, if any, assets, to fund a plan), is one that seeks a dismissal of the case coupled with various conditions . See e.g, Eitel, et. al,, Structured Dismissals, or Cases Dismissed Outside the Code's Structure?  AM. BANKR. INST. J. (March 2011) available at: http://html.documation.com/cds/NCBJ2011/assets/PDFs/V_B.pdf and at .http://www.justice.gov/ust/eo/public_affairs/articles/docs/2011/abi_201103.pdf. Those conditions often include "releases . . ., protocols for reconciling and paying claims, "gifting" of funds to unsecured creditors and provisions providing for the bankruptcy court's continued jurisdiction over

DACA'S OPPOSITION TO DEBTOR'S MOTION TO DISMISS CASE            CASE NO. 11-10497-PB11
2

certain post – dismissal matters." Id. (quoting from Norman L. Pernick & G. David Dean, Structured Chapter 11 Dismissals: A Viable and Growing Alternative After Asset Sales, 29 AM. BANKR. INST. J. (June 2010) at 1, 58-59 (2010).  As noted in the Eitel article, structured dismissals are problematic because, among other things, unlike Chapter 11 plans, they may resemble "sub rosa plans" and unlike Chapter 7 allocations, they may distribute assets "without enforcing priorities, addressing litigation, or ensuring accountability for distributing assets." Id. at 2.

Despite its characterization a "structured dismissal" by the Debtor, the motion is not truly a structured dismissal, yet it has all the negatives associated with one. The Debtor has not yet sold its assets under the aegis of the Bankruptcy Court.  In fact, the proposed Dermastar transaction is not a sale of assets at all, but an influx of capital allegedly contingent upon the conditional dismissal of the bankruptcy proceeding.  The motion asks for none of the usual "bells and whistles" that accompany a structured dismissal. The Court is not even asked to retain jurisdiction to determine administrative claims. Indeed, the only "condition" attached to the outright dismissal of the case, is that the Court retain jurisdiction to determine the Debtor's objections to the Cardium claims, which are now set to be heard concurrently with the motion to dismiss.  Most importantly, the term sheet setting out the Dermastar proposal itself says that is it not a binding document; and it is clear that there is information that has not been provided to the creditors or the Court.  The problems with this procedure, in general, and with the Dermastar proposal, in particular, are many, as noted below.

To begin with, the motion is riddled with incomplete, vague, and misleading information. Among other things, the motion says that "concurrently with the dismissal" Dermastar will "purchase 10 Series A Convertible Preferred Shares for $10,000 each, which will allow Transdel to pay the unsecured claims in the Estate . . . ." (Doc. 74-1, p. 2, l. 10-11). The motion also states that Dermastar will "provide $100,000 for payment of unsecured claims, exclusive of Mr. Ladonnikov's claim." (Doc. 74-1, p. 5, l. 1-2). Unfortunately, this is simply not what the term sheet attached to the Nida

DACA'S OPPOSITION TO DEBTOR'S MOTION TO DISMISS CASE                     CASE NO. 11-10497-PB11
3

Declaration (Ex. B to Doc. 74-2) actually provides. In fact, the term sheet contradicts the motion in several respects.

First, the term sheet, on the last page, expressly provides that it is not a legally binding document, and does not create any legal obligations on the part of any party.

Second, even if the term sheet were binding, it actually provides that Dermastar is to purchase the shares "[a]s soon as practicable from the date of the dismissal." (Doc. 74-2, Ex. B, page 2) (emphasis added). Obviously, the term sheet contemplates that the stock purchase will take place at some time after the dismissal, not concurrently with the dismissal. Moreover, since Dermastar is apparently a recently formed LLC (See, Request for Judicial Notice filed and served concurrently herewith), and does not appear to have a ongoing business, and neither creditors or the court were provided with any information as to its principals or its capitalization, it is not unreasonable to assume that the entity was formed especially to participate in these proceedings, and that the "as soon as practicable" date may never be realized. In any event, there is nothing in the term sheet that provides that the purchase of the shares is to be made "concurrently with the dismissal" as represented in the motion.

Third, the provisions of the term sheet provide that any cash provided by Dermastar to purchase the stock is to be held in a lock box account at Wells Fargo Bank, as additional collateral for Dermastar's ELOC loan. The term sheet further provides that the money would only be available to unsecured creditors for twenty four months, and then only if the Debtor has not been named as a defendant in a lawsuit, and then only if the Debtor chooses to "unilaterally" waive the lock box arrangement - which it could only do if certain other conditions are met. None of these factors or conditions are mentioned in the motion itself. The motion simply states that $100,000 will be provided for "payment of unsecured claims...." (Doc. 74-1, p. 5, l. 1-2).

///

Fourth, under the provisions of the term sheet, it is entirely possible that the ELOC loan would go into default before any funds were distributed to unsecured creditors or, indeed, even before the $100,000 was paid, if it ever is paid. Since the funds are pledged as additional collateral for the ELOC loan, no funds would be available for distribution to unsecured creditors.

Given that the term sheet is not binding, given the provisions of the term sheet regarding the payment and disposition of the stock purchase monies, and, given further, the default provision set out for the ELOC loan, the representation that Dermastar's proposal provides for $100,000 to be available to unsecured creditors concurrently with dismissal of the case is, at best, wholly unsupported and, at worst, misleading.

Other instances of confusing, contradictory, incomplete, or misleading information abound. For example, the motion states that Mr. Ladonnikov's claim will be the "subject of a separate agreement with Dermastar."(Doc. 74-1, p. 5, l. 2-3). No specifics are provided as to the contours of this agreement. This is particularly disturbing since, if this case moves through the bankruptcy court, Mr. Lannikov's claim might be recharacterized and equitably subordinated. Moreover, despite references in the motion to the notion that Mr. Ladonnikov's claim will be subordinated, (See, e.g. Doc. 74-1, p.7, l. 13-14), and a similar reference in Mr. Nida's declaration that Mr. Ladonnikov's claim will be subordinated, (Doc. 74-2, p. 13, l. 6-8), nothing in the term sheet so provides. This is particularly disturbing in that although we do know that Dermastar was "an entity suggested by Mr. Ladonnikov" (Doc. 74-2, ¶ 6, l. 27-28), we do not know what Mr. Ladonnikov's relationship is with that entity. We must assume, however, that there is some, albeit undisclosed, connection between the two, as they are represented by the same counsel, Foley & Lardner, in this matter (See Doc. 20). Indeed, it is not hard to imagine, given the lack of information provided, that somehow Mr. Ladonnikov's claim, which is presently unsecured and might be subject to equitable subordination, might somehow be redefined as a secured claim when all is said and done - at considerable harm to the rest of the unsecured creditors.

Moreover, the motion states, without any empirical support, that "creditors will receive more than if the case were converted to a Chapter 7." (Doc. 74-1, p. 5, l. 4-6). Although the motion indicates that a list of the creditors and the amounts of their claims was attached to the Nida Declaration (Doc. 74-1, p.5, l. 5-6), no such list was attached. More importantly, there were apparently no calculations done with respect to the distribution to unsecured creditors, if any, under the Dermastar proposal as opposed to a Chapter 7 liquidation or Chapter 11 plan.

Additionally, according to the motion, the proposed transaction will provide $750,000 to satisfy administrative and priority claims. (Doc. 74-1, p.7, l. 14-16.) Notably, according to Schedule E, there is only $48,023.44 in priority claims. Excluding Mr. Ladonnikov, there is apparently less than $147,000 in unsecured claims. Yet the Debtor offers no explanation as to where or how $750,000 cash infusion is to be spent - other than to say that it will allow them to pay administrative expenses, priority claims, continue to fundraise, and restart the business. No budget or explanation is provided. No explanation is offered as to why some of the initial cash infusion is not available to pay the unsecured creditors. Nor has the Debtor sought to have the Court retain jurisdiction over the fee applications or the payment of administrative claims.

Also lost in the motion itself, but apparent in the term sheet, is that officers and directors, in addition to being paid for their priority claims, are offered a share of a "Non-Priority Claim Settlement Pool." In essence, insiders are being paid immediately, albeit in stock options, for the non-priority unsecured portion of their claim - while trade and unsecured creditors are not necessarily provided for at all.

Finally, the motion indicates that the proposed transaction will provide some recovery for "unsecured creditor shareholders." (sic). (Doc. 74-1, p.7, l.7-8). This is simply not true. For all the reasons noted above, the assertion that anybody other than the Board of Directors or "priority claimants" will receive any funds from the proposed transaction is largely - or completely- illusory.

The above list is meant to be illustrative, and not exhaustive. The motion simply falls well short of providing the Court with the concrete information that it needs to determine whether dismissal is warranted under either Section 305(a) or Section 1112(b).

## III. DISMISSAL IS NOT WARRANTED UNDER SECTION 305(a) BECAUSE THE INTERESTS OF THE UNSECURED CREDITORS WOULD NOT BE SERVED BY THE DISMISSAL

Section 305(a) of the Bankruptcy Code provides that the court can dismiss a case if "the interest of the creditors and the debtor would be better served by such dismissal." (emphasis added). A dismissal under Section 305(a) is an "extraordinary remedy." In Re Monitor Single Lift I, Ltd. 381 B.R. 455, 463 (Bankr. S.D.N.Y. 2008) (and cases cited therein), cited with approval in In Re Marciano, ___ B.R.___, 2011 W.L. 5041396*16 (9th Cir. BAP 2011). The moving party bears the burden of showing that the interests of both debtor and its creditors would benefit from a dismissal under Section 305 (a). Id. As best as can be discerned from the incomplete and sketchy information provided by the Debtor, the only persons who would benefit from the dismissal are the Debtor's insiders and administrative claimants.

As noted in In Re Monitor, recent court decisions have applied a seven-factor test to determine whether dismissal is warranted under Section 305(a), namely:

> "(1) the economy and efficiency of administration; (2) whether another forum is available to protect the interests of both parties or there is already a pending proceeding in state court; (3) whether federal proceedings are necessary to reach a just and equitable solution; (4) whether there is an alternative means of achieving an equitable distribution of assets; (5) whether the debtor and the creditors are able to work out a less expensive out-of-court arrangement which better serves all interests in the case; (6) whether a non-federal insolvency has proceeded so far in those proceedings that it would be costly and time consuming to start afresh with the federal bankruptcy process; and (7) the purpose for which bankruptcy jurisdiction has been sought."

Id. at 464-465(citations omitted).

Of these factors, only factors 1 and 7 appear to be implicated in this case, and both of these factors favor denial of the motion. With respect to factor number 1, there is no economy or

efficiency of administration if the case is dismissed, because no arrangements have been made with the unsecured creditors - except, apparently the insiders and with Mr. Laddonikov, and no one is privy to what that arrangement might be. With respect to factor number 7, section 305(a) has only recently, and rarely, been applied to voluntary bankruptcies. In this case, the bankruptcy was apparently filed to facilitate the sale of the business- albeit to a specific purchaser. Although that sale was ultimately not approved by the Court, the Bankruptcy Court remains the best forum to facilitate either a sale of the assets and an orderly distribution of the proceeds, or a plan providing for a capital infusion.

Before a case can be dismissed under Section 305(a), the court must "make specific and substantiated findings that the interests of creditors and the debtor will be better served by dismissal or suspension." In Re Marciano, 2011 W.L. 5041396 *17 (9th Cir. BAP 2011). On the basis of the information provided by the Debtor, the required "substantiated findings" simply cannot be made.

Moreover, none of the cases cited by the Debtor support its position. In In Re Eastman, 188 B.R. 621, 624 (BAP 9th Cir. 1995), the Ninth Circuit Bankruptcy Appellate Panel found that the Bankruptcy Court had improvidently dismissed a Chapter 7 case under section 305(a) pursuant to a creditor's motion, noting that a finding that "both creditors and the debtor would be better served by a dismissal" was necessary. (emphasis added). The Colonial Ford, 24 B.R. 1014, 1020-21 (D. Utah 1982), also cited by the Debtor, which predates Marciano by almost thirty years, did find that a "comprehensive" work-out agreement "including virtually all creditors and the debtor" satisfied the "better served" criteria of section 305(a). The Colonial Court did note, as the Debtor suggests, that speed and economy are advantages derived from work-out agreements. Id. at 1020. The Colonial court also noted, however, also proffered that other considerations in determining whether to grant a motion to dismiss under section 305(a) include "fairness, priorities in distribution, capacity for dealing with frauds and preferences, . . . ." Id. In contrast to Colonial, not all of the unsecured

creditors have approved the proposed transaction. Indeed, as noted above, not even all of the terms of the proposed agreement have been made available, and none of those terms that have been made available are binding. On the basis of the available information, however, there is no way to determine how fairness, priorities, fraud and preferences figure in the calculus. Indeed, DACA does not know if any preference investigation has been conducted at all. The motion indicates that Dermastar is insistent on a dismissal of the case because of the delay and cost inherent in a plan. It seems clear, however, that the stumbling block here is transparency and full information, not cost and delay.

     For all the reasons noted above, because of the incomplete and inaccurate information provided in the motion, the Court simply has not been provided the information necessary to determine if a dismissal would serve the interest of the creditors.

## IV. DISMISSAL IS NOT WARRANTED UNDER SECTION 1112(b)

     A case may be dismissed under Section 1112(b) of the Bankruptcy Code if the movant establishes cause, unless it is shown that dismissal or conversion is not in the best interest of creditors and the estate. None of the "cause" grounds enumerated in section 1112(b)(4) are present in this case. The Debtor acknowledges as much, but contends that "cause" exists here because the "Debtor has no other option other than conversion or a sale of its assets pursuant to a plan without any assurance of viable buyer." (Doc 74-1, p.7, l. 19-23). The problem with the Debtor's assertion is that there is no assurance that the Dermastar proposal is viable either, and the information provided is woefully inadequate to apprise the Court of the circumstances surrounding the transaction. As such, the Court is simply not in a position to determine whether the "cause" requirements of Section 1112(b) have been met, or whether dismissal, rather than conversion, is in the best interests of both creditors and the estate.

/ / /

1  As with its arguments under section 305(a), the authority cited by the Debtor does not support its position. Indeed, some of the citations are curious indeed. <u>In re Avi, Inc.</u> 389 B.R. 721,729 (BAP 9th Cir. 2008), the court noted that there are both procedural and substantive requirements to dismissal under Section 1112(b). The substantive inquiry has two components. First, the court must determine if there is "cause" for either conversion or dismissal. Second, the court must determine, in light of the "cause" whether conversion or dismissal is appropriate, based on the "best interests of creditors and the estate." <u>Id</u>.

It may or may not be true that the Debtor's options are limited - but there is no indication that conversion or sale of the assets would not yield a better result for the unsecured creditors, given the provisions of the non-binding term sheet. As noted in the United States Trustee's opposition filed earlier in this case in opposition to the Debtors' motion to sell substantially all of its assets, the administrative expenses in this case are minimal. There are no employees, no leased space, no current operations. The only administrative expenses incurred would be those incurred in a proposed plan or sale.

V.   CONCLUSION

For all the foregoing reasons, DACA respectfully requests that the Debtor's motion to dismiss this case be denied.

Dated:  November 7, 2011

KIRBY & McGUINN, A P.C.

By: _____
Roberta S. Robinson
Attorneys for Creditors  Debt Acquisition
Company of America V, LLC and
DACA 2010L. LP